## Commonwealth *v.* Moyer, Appellant.

*Criminal law—Banks and banking—Statements to banking commissioner—False entries—Conviction—Evidence.*

On the trial of an indictment for making false entries in a statement of a corporation, a verdict of guilty will be sustained, where there is evidence that the defendant caused false entries to be made on the books of a bank and used these false entries in making up his report to the commissioner of banking.

A conviction of perjury in making up these returns will also be sustained, where in addition to the falsity of the report furnished the banking department, there was the signature of the defendant to the affidavit thereof verifying its truth and correctness, the certificate of the notary public under seal that the defendant had sworn and subscribed to the affidavit, and the positive testimony of the notary himself, given at the trial, that the defendant had made oath, to the truth of the contention of the report as therein stated.

In such case, it was wholly immaterial whether or not the banking commissioner had knowledge of the bank's insecure financial condition and any question to the bank examiner on that subject was rightly excluded as not proper cross-examination.

Books of the bank, with which the defendant was familiar, were properly admitted in evidence not only to show the entries therein contained with which he was concerned and the condition of the bank as shown thereby, but also the defendant's knowledge thereof. They were books kept under his supervision and the entries therein

were accessible and known to him and many of them had been made by his orders.

*Criminal procedure—Two indictments for offenses growing out of same transaction—Trial—Severance—Discretion of the court.*

On the trial of indictments charging the defendant with making false entries in a statement of a corporation and perjury in making oath to the correctness of said false statement, it was within the sound discretion of the court below to refuse the defendant's motion for a severance. The offenses grew out of the same transactions, the same evidence was necessary in both cases, and they were interrelated to such an extent that neither case could be made out without using the material evidence of the other. In order to prove that the defendant was guilty of perjury the Commonwealth had to prove that the statement which he made was false, which was the gravamen of the other charge. Two trials on the same evidence might have afforded the defendant some tactical advantage, but he was not deprived of any legal right by the court's action, and the refusal of his motion is not ground for reversal.

Argued November 10, 1920. Appeals, Nos. 207, 208, Oct. T., 1920, by defendant, from judgment of Q. S. Phila. County, August Sessions, 1919, Nos. 474-477, on verdict of guilty in case of Commonwealth of Pennsylvania v. Ralph T. Moyer. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictments for perjury, and for making false entries in a statement in writing of a corporation. Before DAVIS, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence, the charge of the court, answers to points, and refusal of defendant's motion for a severance.

*William A. Gray,* and with him *Samuel G. Schwartz,* for appellant.

*Joseph H. Taulane,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY KELLER, J., March 5, 1921:

The defendant was tried and convicted on two indictments. The one charged him with making false entries in a statement to the commissioner of banking of the financial condition of the North Penn Bank, a state bank of which he was cashier; the other with perjury in making oath to the truth and correctness of said false statement. Twenty-seven assignments of error are filed in this court, none of which warrants the reversal of the judgments. We will consider them, or such of them as require special reference, under ten heads.

1. It was within the sound discretion of the court below to refuse defendant's motion for a severance and try the indictments together: Com. v. Wheeler, 75 Pa. Superior Ct. 84. They grew out of the same transaction; the same evidence was necessary in both cases and they were interrelated to such an extent that neither case could be made out without using the material evidence of the other. In order to prove that the defendant was guilty of perjury the Commonwealth had to prove that the statement to which he made oath was false, which was the gravamen of the other charge. Therefore all the evidence under the indictment charging the defendant with making false entries was relevant under the perjury charge and if that evidence was not sufficient to make out a case under the one indictment, neither was it under the other. The defendant was not deprived of any legal right by the court's action. Two trials on the same evidence might have been to his tactical advantage, but with that we are not concerned.

2. A man who can neither read nor write and knows nothing about arithmetic or figures is not competent to act as a juror in a case involving complicated accounts and abstruse figuring; and the court did not err in sustaining the Commonwealth's challenge for cause on that ground.

3. There was sufficient evidence, if believed by the jury, to warrant a conviction on the charge of making false entries in the statement to the commissioner of banking. A brief review of only a very small part of the thousand pages of testimony in the case is convincing on this point. On June 5, 1919, the commissioner of banking called for a report of the financial condition of the North Penn Bank as of June 2, 1919. The defendant directed Colflesh, the general ledger bookkeeper, to prepare, or take off, from the books in his custody, a daily balance sheet showing the bank's condition as of that date. When this was furnished defendant he made certain changes in the figures in lead pencil, and directed Colflesh to make a new balance sheet conforming to his lead pencil figures, and destroy the old one; and also ordered him to alter the figures in the general ledger for June 2, 1919, so as to correspond with the lead pencil changes. These lead pencil changes consisted, in round numbers, of the following: Cash on hand was reduced from $119,210 to $89,210. Cash on deposit in Quaker City National Bank was increased from $2,200 to $42,-200; in the Franklin Trust Company, from $10,724 to $40,724; in the Union National Bank, from $79,468 to $89,468; and in the Irving National Bank, of New York, from $20,935 to $42,935. The item of individual deposits (as shown on Individual Ledger No. 1-A. to G.), was decreased from $140,956 to $100,956; savings fund account was increased $72,000, and "Cashier's checks" was changed from a debit of $33,968 to a credit of $6,042, a difference of $40,000; requiring corresponding changes in the totals. None of these lead pencil figures appeared on the books of the bank. Pursuant to defendant's or-

ders, Colflesh made a new balance sheet in conformity with the lead pencil changes and placed it in the folder on defendant's desk where they were always contained; and he also made the same changes in the general ledger for June 2, 1919, but the original figures in the ledger for June 1st, and June 3d and following, were retained, so that the changed balance sheet as shown in the general ledger for June 2d, did not correspond with the balance sheets before or after that date, nor did the figures in it agree with the book entries from which they were supposed to be posted. He kept, however, the sheet on which defendant had made the lead pencil changes and it was turned over to the receiver on the failure of the bank, and was offered in evidence on the trial.

In making up his report to the commissioner of banking defendant used these changed and fictitious figures and moreover made some additional false entries. He arbitrarily and without any actual count reported the cash item of $89,210 under three heads: (a) Cash, specie and notes, $75,489; (b) nickels and cents, $2,047; (c) checks and cash items, $11,674; whereas the actual cash on hand at the time was less than $20,000, and the rest, carried on the books as cash, was in reality made up of checks, which had been paid but not charged up against the depositors' accounts because there was no money there to meet them. He reported the money due from approved reserve agents as $205,328, when the amount as shown on the books was $72,000 less, and even this was false, for the balance in the Union National Bank appeared on the books as $79,468, but was actually $43,-563 less, two drafts for that amount having been paid, but by defendant's orders not charged against the account. Overdrafts were stated in the report to be $1,070, whereas they were actually over a million dollars, not counting some thousands of dollars of checks, held by the paying teller, which had been paid on the defendant's orders but not charged up against individual accounts, because of insufficient funds to their credit. And that

these overdrafts were known to the defendant was shown by evidence that most of them had been authorized or O-K'd by him, that his own individual overdraft was over $3,000, and the overdraft of a club of which he was treasurer was $3,400.    It was also shown that by his orders individual accounts had been juggled and overdrafts improperly charged to good accounts, just before bank examinations, and when the overdrafts became so large that one of the individual ledgers showed no deposit balance in the general ledger, a considerable sum had been transferred to it by main force from another ledger.    There was much more testimony to the same effect, but it need not be adverted to here.    Taken as a whole there was ample evidence to sustain the finding of a jury that the defendant had not only made the false entries in the statement or report to the commissioner of banking, as charged in the indictment, but also that at the time of doing so he knew that they were false.

4. ₁There was sufficient evidence, if believed, to sustain a conviction on the charge of perjury.    In addition to the evidence as to the falsity of the report furnished the banking department, there was the signature of the defendant to the affidavit on the back thereof verifying its truth and correctness, the certificate of the notary public under seal that the defendant had sworn and subscribed to the affidavit and the positive testimony of the notary himself, given at the trial, that the defendant had made oath to the truth of the contents of the report as therein stated.    It is true he admitted that he had not seen the inside of the report and so far as he personally knew the entire inside might have been blank, though he did not think so; but he was followed by the defendant's stenographer who testified that the report had been typewritten by her pursuant to defendant's orders before he signed the affidavit or the notary had signed the jurat or affixed his seal, and that when she received it from the notary she mailed it to the commissioner of banking. The credibility of the notary, his omission to note the

affidavit in his register at the time and his subsequent insertion of it were all for the jury.

5. It was wholly immaterial whether the banking department had knowledge of the bank's insecure financial condition or not. Hence the defendant's question to the bank examiner, Cameron, was rightly excluded. Furthermore, it was not proper cross-examination.

6. Nor did it matter that the defendant himself may not have profited financially from his illegal actions; and the cross-examination of the Commonwealth's witness along that line was correctly ruled out as immaterial.

7. The court committed no error in permitting Colflesh, and Strang, the paying teller, and the individual ledger bookkeepers to testify as to items appearing in the books of the bank in their custody and of the defendant's personal knowledge of them, or in receiving the books themselves in evidence, even though all the entries in the books had not been made by the witnesses and there was no proof of the Commonwealth's inability to secure the attendance of the other clerks who had worked on them. The books were not admitted as books of account, in the usual sense, nor were they offered as such. They had been produced by the receiver and identified as the books of the bank by the persons who had worked upon them. They were books kept under the supervision of the defendant to show the condition of the bank, and the entries therein were accessible and known to him, and many of them had been made by his order. Therefore they were admissible not only to show the entries therein contained with which he was concerned, and the condition of the bank as shown thereby, but also defendant's knowledge thereof. The authority upon which the defendant relies, Phillips v. U. S., 201 Fed. 259, does not sustain his contention. In that case, Phillips, an officer of the First National Bank of Vinita, Oklahoma, was indicted for making a false entry in his report to the comptroller of the currency as to the bank's balance in the

Hanover National Bank of New York, and it was the latter's books, with which the defendant had nothing to do, that the court held could not be received in evidence without proof of their accuracy. But the court in that case referred with approval to the opinion of the circuit court of appeals in Bacon v. U. S., 97 Fed. 35, where the court, under circumstances similar to the present trial, sustained testimony such as is here objected to and the admission in evidence of the books of the bank kept under defendant's supervision.

8. Nor did the court err in permitting the expert accountant, Goldsmith, to testify as to the accuracy or inaccuracy, according to the bank's books, of the lead pencil figures made by defendant on the daily balance sheet and of the items appearing in the report to the commissioner of banking. The accuracy of his testimony was not questioned and his evidence was useful by way of clarifying and making understandable to the jury the intricate system of bookkeeping employed by the bank. The memorandum used by him to which the defendant's counsel objected was apparently only an index or sort of ready reference indicating where he would find particular data in the bank's records, but on the defendant's objection its use was discontinued. The reference to the act of assembly fixing bank reserves was only incidental to his explanation of the reserve required to be carried by law. The jury would not have understood the testimony as to the reserve and its bearing on the false entries made by defendant in his report to the banking department unless they knew the percentage which the reserve must bear to demand liabilities and the ratio in which it must be apportioned between cash and reserve agents. He correctly stated the legal fact and the defendant was not prejudiced thereby.

9. The court did not err in refusing to withdraw a juror and continue the case because of the remarks of either the trial judge or the district attorney. The statement of the trial judge was entirely proper. A witness

had testified to entries which he made in the ledger at defendant's direction which were wholly fictitious and which did not agree with the journal. The judge, in overruling defendant's objection to the evidence, did not say that the figures were fictitious or the entries false, but only that "these questions of overdrafts, of false entries, of fictitious figures" had been admitted to show a system or design by the defendant and not a mere accident on his part. Nor were the remarks of the district attorney such as to require the withdrawal of a juror. The occasion chiefly objected to was caused by the defendant's counsel addressing the district attorney by way of protest instead of objecting to the court, and brought precisely the same reply which defendant's counsel himself had interjected a short while before. Even this would not excuse it if the defendant's case had been prejudiced thereby, but we are satisfied this was not the case. As to the others, the Commonwealth's officer has a right to refer to the importance of the case to the Commonwealth, just as the defendant's counsel may, on behalf of his client, and to ask for careful consideration of the evidence by reason thereof and the full performance of their duty in the light of it.

10. We find no error in the charge of the court. It was a hotly contested case extending over nine days, and in our opinion was well tried. The charge as a whole was a fair and unbiased presentation of the evidence adduced by the Commonwealth and the issues involved. The defendant offered no testimony. The trial judge's reference to the defendant as the active, directing head of the bank and to his duty in the circumstances, was justified by the evidence. He refused the defendant's eleventh point because it was unintelligible to him. If it meant as was contended at the argument precisely the same as the tenth point, no harm was done the defendant, for that point was affirmed. If it meant more, it was too broad. The law is that the testimony of one accomplice cannot be considered by the jury as corrobo-

rating another within the meaning of the rule requiring that perjury must be proven by at least two witnesses or by one witness and corroborating circumstances: Williams v. Com., 91 Pa. 493; and the jury in this case were so instructed. We are not sure that we exactly understand what the defendant meant by his fourth point: "The fact that the notary public has certified that the defendant was sworn does not raise any presumption to that effect," which the court refused without reading to the jury. The late Professor J. B. Thayer in his pamphlet on the Presumption of Innocence (see 3 Rawle's Bouvier's Dictionary 2679) enumerated seven uses which might properly be applied to the word "presumption," one of which was: "The presumption of facts properly defined where a fact or set of facts furnishes evidence or inference of another." Used in this sense the court did right to refuse the point. The certificate of the notary was substantial evidence in the case. In England it has been held sufficient, when the signatures of the affiant and magistrate, and the falsity of the subject-matter were proven, to make out a prima facie case without other proof of the defendant's oath: Rex v. Morris, 1 Leach 501, 2 Burrows 1189 [Lord Mansfield]; Reg. v. Turner, 2 Carr. & Kirwin 732. See also Com. v. Warden, 11 Metc. 406 (Mass.); State v. Madigan, 59 N. W. 490 (Minn.).

The remaining assignments do not merit special reference. They are all overruled. The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.