# Commonwealth *v.* Widovich et al., Appellants.

*Criminal Law—Sedition—Freedom of Speech—Advocating Criminal Acts—Charge of Court—Section 7, Article I of Pennsylvania Constitution — Evidence—Competency — Motive and Intent—Acts of June 26, 1919, P. L. 639, and May 10, 1921, P. L. 435.*

In the trial of an indictment for sedition, under the Act of June 26, 1919, P. L. 639, as amended by the Act of May 10, 1921, P. L. 435, it appeared that three of the defendants were active members and leaders of a local branch of an organization in Russia, having for its object a world-wide revolution to overthrow all existing governments excepting that of Soviet Russia. The defendants were arrested while participating in a meeting in the basement of the home of one of them, at which place a number of buttons intended for use in the celebration of the Ninth Anniversary of the Soviet Republic, together with a large number of seditious publications, were seized. The evidence established that the defendants frequently taught "by word of mouth" the doctrines contained in the organization pamphlets, among which were included the destruction of government by armed force, the seizure of the instruments of government, the establishment of a dictatorship, the limitation of political liberty, and suppression of opposition to the revolutionists, and urged the overthrow of the state and national governments by various forms of violence. Such evidence was sufficient to sustain a conviction.

The rights of the defendants under Section 7 of Article I of the Pennsylvania Constitution, which guarantees freedom of speech, were properly safeguarded by a charge that the sedition statute does not prohibit the advocacy of change in our political, social and industrial institutions, irrespective of how far reaching or radical the proposals for change may be, unless there is coupled with such proposals the advocacy of criminal acts as a means or method of achieving the desired change.

In such a prosecution, it was not error to admit in evidence, books, papers and pamphlets, seized in possession of defendants, but not specified in the indictment, where their effect as evidence was limited to the purpose of showing the motive and intent of defendants and the objects, policies and purposes of the organization of which they were members.

*Acts of June 26, 1919, P. L. 639 and May 10, 1921, P. L. 435—Constitutionality Sections 1, 2 and 7 of Article I of Pennsylvania Constitution.*

The Act of June 26, 1919, P. L. 639, as amended by the Act of May 10, 1921, P. L. 435, does not violate Sections 1, 2 or 7 of Article I of the Pennsylvania Constitution. While freedom of speech is guaranteed every citizen by the latter section, freedom of speech does not include the right of solicitation to commit a felony.

*Criminal Procedure—Trials—Severance—Discretion of Court.*

The granting or refusal of a severance, is a matter within the discretion of the trial court, and will be reviewed only to determine whether there has been an abuse of discretion.

*Criminal Procedure—Indictment—Sufficiency.*

An indictment is sufficient which charges a crime substantially in the language of the Act under which it is drawn, and with such certainty that the defendants may know what they are called upon to answer.

*Constitutional Law—Due Process of Law—Definition of—Fourteenth Amendment to Federal Constitution.*

Due process of law means there can be no proceeding against life, liberty or property which may result in the deprivation of any of them, without the observance of those general rules established in our system of jurisprudence for the security of private rights.

*Criminal Law—Duty of District Attorney.*

The duty of a district attorney and of private assisting counsel as quasi-judicial officials is to present the Commonwealth's case fairly and to press upon the jury only those deductions from the evidence which are strictly legitimate.

Argued March 12, 1928. Appeals Nos. 1506, 1507, 1508 and 1509, April T., 1928, by defendants from judgments of Q. S., Beaver County, June T., 1927, No. 163, in the case of Commonwealth v. Philip Widovich, Peter Muselin, Tom Zima, Milan Resetar and Steve Bratich. Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed as to appellant Bratich, and affirmed as to the others.

Indictment for sedition, under the Act of June 26, 1919, P. L. 639, as amended by the Act of May 10, 1921, P. L. 435. Before McCONNEL, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty against all but the defendant Widovich who could not be found, upon which judgments of sentence were passed. Defendants appealed.

*Errors assigned,* among others, were the refusal to quash the indictment, various rulings on evidence, re-

marks of the court to counsel, charge of the court, and answers to points.

*Henry H. Wilson*, for appellants, cited: Commonwealth v. Shoemaker, 240 Pa. 255; Commonwealth v. Mazarella, 279 Pa. 465; Commonwealth v. Ronello, 251 Pa. 329; Commonwealth v. Barille, 270 Pa. 388; Commonwealth v. Delfino, 259 Pa. 272; Commonwealth v. Bubnis, 197 Pa. 542; Commonwealth v. Chester, 77 Pa. Superior Ct. 388; Commonwealth v. Nicoletti, 82 Pa. Superior Ct. 395; Commonwealth v. Stallone, 281 Pa. 41; Commonwealth v. Myma, 278 Pa. 505.

*W. D. Craig*, Private Counsel, and with him *J. Blaine McGoun*, District Attorney, for appellee, cited: Commonwealth v. Place, 153 Pa. 314; Commonwealth v. Emmett, 74 Pa. Superior Ct. 86; Commonwealth v. Deutsch, 72 Pa. Superior Ct. 298; Commonwealth v. Sonis, 81 Pa. Superior Ct. 205; Commonwealth v. Blankenstein, 81 Pa. Superior Ct. 340.

OPINION BY CUNNINGHAM, J., April 16, 1928:

On June 8, 1927, a grand jury sitting in Beaver County returned as a true bill an indictment containing six counts in each of which Philip Widovich, Peter Muselin, Tom Zima, Milan Resetar and Steve Bratich were charged with violations of the Act of June 26, 1919, P. L. 639, entitled "An Act defining sedition, and prescribing the punishment therefor," as amended by the Act of May 10, 1921, P. L. 435. The act contains two sections, the first defining the word "sedition" under eight lettered paragraphs, and the second making the offense, as defined, a felony and prescribing the punishment. One of the defendants, Philip Widovich, has not been apprehended and the trial proceeded against his four co-defendants, of whom Muselin, Zima and Resetar are naturalized citizens and Bratich has obtained his first papers. At its conclusion the learned

trial judge instructed the jury that the Commonwealth had not produced evidence which would sustain a conviction of any of the defendants upon the second, third or sixth counts of the indictment. The case was submitted to the jury as against all four defendants upon the first count, and a verdict of guilty as to each rendered thereon; it was also submitted against certain defendants, as hereinafter stated, upon the fourth and fifth counts. Each defendant has appealed from the judgment pronounced against him and these four appeals were argued together and will be disposed of in one opinion. The first count was drawn under paragraph (a) of section 1 of the act which provides "that the word 'sedition,' as used in this act, shall mean:

¡Any writing, publication, printing, cut, cartoon, utterance, or conduct, either individually or in connection or combination with any other person or persons, the intent of which is:

(a)    To make or cause to be made any outbreak or demonstration of violence against this State or against the United States."

The seditious conduct specifically charged in this count was "by word of mouth, urging upon each other and upon other persons to acquire arms, ammunition and dynamite, to band themselves together to organize and drill, and to overthrow and destroy the government of this Commonwealth and of the United States by force, arms and bloodshed."

The fourth count was drawn under paragraph (h) of section 1 of the act which provides that sedition "shall also include......

- (h)    Organizing or helping to organize or becoming a member of an assembly, society, or group, where any of the policies or purposes thereof are seditious as hereinbefore defined." As drawn the count charged, inter alia, that defendants "did.......help to organize and became members of the Workers (Communist) Party of America, and did......help to organize and

became members of a branch of the Workers (Communist) Party of America, located in the said Borough of Woodlawn, in the County of Beaver in said Commonwealth, which Workers (Communist) Party of America and the aforesaid branch thereof, had for its policies and purposes the.......overthrow of the government of this Commonwealth and of the United States, by force, arms, dynamite and bloodshed, .......and the setting up in this country of a Soviet Republic."

This count was submitted to the jury as against only one of the defendants, Muselin, but through some misunderstanding of the instructions, a verdict of guilty on it was returned against Zima and Resetar, as well as Muselin. As the defendants were not sentenced under any particular counts and as the sentences of Zima and Resetar were less than might have been imposed under the first count, this error on the part of the jury would not require a reversal of the judgments against them.

The fifth count, upon which only Muselin and Resetar were convicted, was drawn under paragraph (g) enacting that sedition shall also include "the sale, gift or distribution of any prints, publications, books, papers, documents, or written matter in any form, which advocates, furthers or teaches sedition as hereinbefore defined." It charged that the defendants "did......sell, give away, have in their possession and distribute certain prints, publications, books, papers, documents and other written matter, to wit, 'The Theory and Practice of Leninism' [followed by a specification by their titles of fourteen additional publications, including "The A. B. C. of Communism" and "Manifesto of the Communist International"], which said prints, publications, books, papers, documents and printed matter advocated, furthered and taught sedition, in part in the following language, which said language refers to this Commonwealth and the United States"

and then follows a number of quotations from the texts of the above mentioned documents and publications. A number of publications and documents other than those specified in the indictment were admitted in evidence, as will hereinafter appear, for a limited purpose, but the jury was instructed that it could not convict on this count for disseminating any publications other than those specifically referred to in the indictment and that with respect to these there could be no conviction unless the jury found from the evidence "that one or more of those books, writings or pamphlets were seditious in fact, as defined by that act of assembly, and that these defendants did actually sell, give away, or distribute those very prints, or some of them," within the statutory period.

The case occupied a number of days in its trial and we have made a careful examination of the entire record, including more than seven hundred printed pages of testimony. Without attempting a detailed review of the testimony, which was conflicting upon vital points, it is sufficient to say that there was competent evidence from which a jury would be justified in finding these material facts. During the two years preceding the finding of the indictment, Muselin, Resetar and Zima were active members and the leaders of a local branch of the Workers (Communist) Party of America, designated as Branch 55 of District 5, and having about twenty members; Muselin and Resetar each served at different times in the office of secretary and procured and distributed books and pamphlets setting forth the policies and purposes of the organization including its official publication "The Daily Worker." The Workers (Communist) Party of America is under the jurisdiction of and connected with the Third International of Moscow, having as its aim a world-wide revolution to overthrow all existing governments save that of Soviet Russia. Muselin, Resetar and Zima frequently taught

"by word of mouth" the doctrines contained in "The A. B. C. of Communism" and "The Theory and Practice of Leninism" etc. Some of these as set out in the indictment are:

"Now both in England and America, the preliminary condition of every real people's revolution is the breaking and the destruction of the governmental machine. (The State and Revolution.) In other words, the destruction of the bourgeois governmental machine, is the indispensable condition for the proletarian revolution, the inescapable law of the revolutionary movement in Imperialistic countries.

"The proletarian revolution is impossible without the violent destruction of the bourgeois governmental machine and the putting of a new one in its place. (The Proletarian Revolution.) ......

"After the first blow of the proletarian revolution and the seizure of the central apparatus of power by the proletariat the bourgeois inevitably needs a certain time for mobilization of its forces, the bringing up of reserves and their organization. Its passing to a counter attack opens up an epoch of undisguised warfare, and armed clash of the forces of both sides.

"It is just during this period that the rule of the proletariat acquires the harsh features of a dictatorship; a Red Army, a terrorist suppression of the exploiters and their allies, the limitation of political liberty, becomes inevitable if the proletariat does not wish to give up without a fight the power it has won.

"The dictatorship of the proletariat is consequently a form of government of the State which is most adapted to the carrying on of a war with the bourgeois, and to guarantee most rapidly the victory of the proletariat in such war. ......

"In order to overthrow the international bourgeois and to create an international Soviet Republic as a transition stage to the complete abolition of the

330 · COM. *v.* WIDOVICH et al., Appellants.

state, the Communist International will use all means at its disposal, including force of arms.''

The meetings of the local group were held monthly or oftener and usually in the basement of Zima's home. The immediate occasion for this prosecution was a meeting at that place on the evening of Armistice Day, November 11, 1926, which was raided by police officers holding search warrants. The theory of the Commonwealth, supported by evidence, was that the meeting was held pursuant to a general call for the celebration of the Ninth Anniversary of the revolution in Russia. Of the appellants Zima and Resetar were participating actively in the meeting. When the officers entered Resetar was standing in front of a table holding a cup and making a speech in a foreign language. He admitted that he attempted to hide under the table cloth a number of buttons, with pins attached, intended for use in the celebration of this anniversary of the Soviet Republic of Russia. Printed on them was the insignia of the party and the legend ''U. S. S. R. 9th Anniversary, Forward to the Soviet Republic of the U. S. A.'' A large number of publications were seized in different parts of Zima's house. A room occupied by Resetar and the dwelling and barber shop of Muselin were also raided; there additional quantities of books and pamphlets alleged to be seditious were seized, as well as some publications which admittedly were not. The contention of appellants that the meeting was not in celebration of the revolution in Russia but of the birthday of one of Zima's daughters was fairly submitted to, but evidently rejected by, the jury. We have referred to enough of the testimony to show that there was evidence to sustain the conviction of these three appellants; that conviction should not be reversed upon these appeals unless some error injuriously affecting their rights was committed during the trial.

Eighty assignments of error have been filed and their number renders any detailed discussion of them

prohibitive. They relate generally to the refusal of the court to quash the indictment; the refusal of a severance; rulings on evidence; the overruling of repeated motions for the withdrawal of a juror; alleged errors in the charge; and the general contention that appellants are about to be deprived of their liberty without due process of law.

The motion to quash was based upon two grounds— the alleged uncertainty, insufficiency and duplicity of the indictment and the asserted unconstitutionality of the legislation under which it was drawn. The indictment charged the crime substantially in the language of the act and with such certainty that the defendants knew what they were called upon to answer. No application was made for a bill of particulars. The sufficiency of indictments was considered in the recent case of Commonwealth v. Romesburg, 91 Pa. Superior Ct. 559, and a reference to that case and those therein cited is all that is now necessary to support our conclusion that the indictment in this case was sufficient. This court had occasion to consider the legislation under which this indictment was drawn in Commonwealth v. Belevsky, 79 Pa. Superior Ct. 12, and Commonwealth v. Blankenstein, 81 Pa. Superior Ct. 340. In the latter case Judge HENDERSON, writing the opinion for the court, demonstrated that the act does not offend against section 1 of Article I (Declaration of Rights) of the state constitution, or against section 2 of the same article, granting to the people the right to alter, reform or abolish their government in such manner as they may think proper. It is further suggested however in this case that the act is violative of section 7 of the same article, guaranteeing that "every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." A complete answer to this contention is found in a single sentence from the opinion in Commonwealth v. Blankenstein, supra,—"Freedom of

speech does not include the right of solicitation to commit a felony.''

We think the learned trial judge correctly disposed of this contention and made the true distinction clear to the jury in charging that ''the right of free speech, which was so elaborately argued by the counsel for the defense in this case, really is not in it, because no law can abridge or limit any citizen's right of free speech. And it is alleged in this case, not that they spoke certain things, or that they held certain views, or that they did certain things; but that they had uttered certain things and have been guilty of doing certain things, the intent of which is the forcible overthrow of this government, and that is the evil which is intended to be covered by this statute. It is not intended to cover the opinions of these defendants nor their views upon political subjects. ...... If they merely uttered certain sentiments; if they merely have certain views which you may be opposed to; that is not the question in this case.'' This matter was further referred to and disposed of in a manner certainly as favorable to appellants as they had any right to ask by the affirmance, without qualification, of their eighteenth and twenty-fourth points. The eighteenth read: ''The sedition statute does not prohibit the advocacy of change in our political, social and industrial institutions, no difference how far reaching or radical the proposals for change may be, unless there is coupled with such proposals the advocacy of criminal acts as a means or method of achieving the desired change.'' The twenty-fourth point was: ''Under the constitution and laws of this State the defendants and the Workers Party of America had the right to teach and advocate the theories and doctrines of the class struggle, the dictatorship of the proletariat, the Soviet system of government, the abolition of the capitalist system, internationalism, industrial unionism, affiliation with the Communist International, recognition and support of

the Soviet Government of Russia, independent working class political action, and proletarian revolution, and the other political, industrial, economic and social theories, doctrines and reforms referred to in the documents in evidence in this case, provided, however, that there was not coupled with the teaching and advocacy of such doctrines and policies any proposals of or incitement to the commission of criminal acts, of physical injury directed against the government of this State, or against the Government of the United States, or against the officials of these governments, or the injury or violent destruction of their property." The jury was left in no doubt with respect to the rights of the appellants under the constitutional provisions invoked in their behalf. What we have said concerning the validity of the indictment also disposes of the motion in arrest of judgment which was based upon the same grounds as were urged against the indictment. The granting or refusal of a severance is a matter within the discretion of the trial court and will not be reviewed except to the extent of inquiring whether there has been an abuse of discretion: Com. v. Place, 153 Pa. 314; Com. v. Emmett et al., 74 Pa. Superior Ct. 86; Com. v. Sonis et al., 81 Pa. Superior Ct. 205. Our review of the evidence has satisfied us that there was no abuse of discretion in refusing a severance in this case. Considerable stress was laid by the earnest and able counsel for appellants, at the oral argument and in his printed brief, upon alleged errors in the admission of books, papers and pamphlets, seized in the possession of these three appellants, other than the books and pamphlets referred to in the indictment, and to the admission in evidence of a picture and bust of Lenin. In several instances there were a number of copies of the same book or pamphlet. The jury was instructed, as already stated, that it could not find the defendants guilty of disseminating any literature other than the documents specified

in the indictment and it was explained to them that the other exhibits had been admitted in evidence simply for the purpose of enabling the jury to decide "the intent with which the alleged actions of the defendants were performed." We think the evidence was admissible for the purpose of showing the motive and intent of the defendants; the policies and purposes of the party of which their group was a branch; whether the defendants accepted the views and avowed purposes of the party; and whether it was a seditious organization within the meaning of the act. Particular complaint is made of the admission in evidence of a copy, dated March 12, 1927, of "The Daily Worker," the official organ of the party, subscribed to and distributed by some of the defendants and containing an obscene poem, entitled, "America." This exhibit was admitted, as stated by the court, "for the purpose of showing the character of the organization to which they belong; nothing else. Not as an overt act of these defendants at all." Referring to this exhibit and some other books and pamphlets with titles indicating that the contents might be obscene but not seditious (some of which had been first brought to the attention of the jury by counsel for defendants for the purpose of showing that they were not seditious publications), the trial judge explained to the jury that the defendants were not on trial for the possession of obscene literature but for sedition and that only. Among other books and papers seized and admitted in evidence was a bundle of papers published under the title "Negro Champion," the official organ of the American Negro Labor Congress, which papers were found in the residence of Muselin. There was evidence that he had arranged for the distribution of these papers to members of that race and that one of the objects of the Workers Party was the organization of communist groups in the American Negro Labor Congress. We are not persuaded, in the light of the pur-

poses for which these publications were admitted and of the instructions of the court to the jury, that reversible error was committed in admitting these exhibits. They were similar to the exhibits referred to in Com. v. Blankenstein, supra, and tended to support the contention of the Commonwealth relative to the policies and purposes of the organization and the intent of the defendants. That case is also authority for the admission in this case of the testimony of Henry J. Lenon, who testified with respect to the organization and aims of the Workers (Communist) Party in America.

Seventeen assignments are based upon the overruling of a number of motions by counsel for appellants for the withdrawal of a juror. We have examined all these assignments and are not convinced that the trial judge committed reversible error in refusing these repeated motions. It is true that there were exchanges between counsel and several admonitions from the bench which, especially when removed from their settings, would seem to have been unnecessary and to have added nothing to the dignity of the trial. A review of the record indicates that the case was prosecuted vigorously but fairly; that appellants were most earnestly and zealously defended; and that the remarks of the trial judge now complained of were usually provoked by the language and conduct of the complaining counsel. The duties of a district attorney and of private assisting counsel, as quasi-judicial officers, are defined in Com. v. Nicely, 130 Pa. 261, in which it is said, inter alia: ''He should present the Commonwealth's case fairly, and should not press upon the jury any deductions from the evidence that are not strictly legitimate. When he exceeds this limit, and in hot zeal seeks to influence them by appealing to their prejudices, he is no longer an impartial officer, but becomes a heated partisan.'' We are unable to find in this record any misstatements of evidence, any effort to appeal to the

prejudices of the jury, or any undue zeal in the presentation of the case for the Commonwealth.

The seventy-eighth assignment is to the charge as a whole as being misleading, prejudicial and not a correct statement of the law governing the case. We gather that it was contended by counsel for appellants, as expressed in his brief, that the act defining and punishing sedition is "a good thing to have in the armory of the Commonwealth; but that its use must be left to the discretion of the jury." He seems to have argued to the jury that it, having the right to determine the law and the facts, should conclude that the law here in question is injudicious and should not be enforced.

The twenty-seventh point as submitted read: "The defendants in this case are protected by Article XIV of the Amendments to the Constitution of the United States, and cannot be deprived of their rights except by due process of law, one phase of such due process of law in the instant case being the right of the defendants to have the jury as the judge of both the law and the facts." This point was affirmed with the qualification, substantially, that the jury did not have the right to judge of the law separately from the facts according to its own notion of whether it should be enforced and that the jury should take the instructions of the court as the best evidence of the law. The court correctly charged: "If those laws are ill advised, or are injudicious, it is for the legislature to repeal those laws and not for juries to violate their oaths and refuse to enforce them." It is argued generally that the trial, as conducted, was not due process of law within the meaning of the Fourteenth Amendment to the Federal Constitution. As interpreted by the Supreme Court of the United States in Hagar v. Reclamation District, 111 U. S. 701, the clause invoked means "that there can be no proceeding against life, liberty, or property which may result in the deprivation of either,

without the observance of those general rules established in our system of jurisprudence for the security of private rights.'' The record in this case does not disclose any violation of the rules constituting the system of jurisprudence which we have established for the protection of individuals in the exercise of their rights. We are satisfied that these three appellants had a fair and impartial trial, in accordance with established principles of procedure, and that their conviction was not the result of prejudice against them by reason of their foreign birth or on account of their political opinions and beliefs. So far as we can discover they were convicted because the evidence indicated that, being hostile to our form of government, they became officers, teachers and leaders in an organization having for its policies and purposes the overthrow of the government of this State and of the United States, not by any of the modes prescribed by our constitution and legislation for the altering, reforming or abolishing thereof, but by means of force, arms and various forms of violence, and that they have repeatedly urged and incited the members of their group to substitute for it, by such means, a form of government in which they believe. We have examined and considered all the assignments of error filed in their behalf and have reached the conclusion that they should all be dismissed and the judgments against these particular appellants affirmed.

The question remaining for consideration is whether the evidence justified the submission of the case to the jury as against Steve Bratich. There is evidence on the part of the Commonwealth, and by his own admissions, that Bratich became a member of the local branch of the Workers (Communist) Party in June, 1922, more than two years before the finding of the indictment, and that he continued to be a member at least until September, 1926. The records of the group indicate that his dues were paid until December, 1926,

and there is evidence that he attended some of the meetings in the summer of that year. He denied that he was at Zima's house on the night of the raid; the evidence to the contrary was not positive and satisfactory, but was, perhaps, enough to go to the jury if showing his mere presence there would warrant his conviction under the first count. We think that would not be sufficient.

The trial judge charged that there was no evidence that Bratich became a member of or helped to organize the alleged seditious society within the statutory period and therefore declined to submit the fourth count as against him. The only count upon which the case went to the jury as against him was the first, in which the seditious conduct charged was specified and limited to urging "by word of mouth" the commission of the acts of violence therein stated. We have not been able to find any evidence that Bratich at any time "by word of mouth" urged upon any person the making, or causing to be made, of any outbreak or demonstration of violence against the state or national government. Counsel for the Commonwealth frankly conceded at the oral argument that he could not refer us to any direct evidence that he had done so. Under this state of the evidence the trial judge should have directed his acquittal: Krause v. Commonwealth, 93 Pa. 418.

In the appeals of Peter Muselin, Tom Zima and Milan Resetar at Nos. 1506, 1507 and 1508, April T., 1928, respectively, the judgment against each appellant is affirmed and it is ordered that they appear in the court below at such time as they may be there called and that they be by that court committed until they have complied with the respective sentences pronounced against them, or any part thereof which had not been performed at the time each appeal was made a supersedeas.

In the appeal of Steve Bratich at No. 1509, April T., 1928, the judgment is reversed and the defendant discharged.