Commonwealth *v.* Kauffman, Appellant.

420 

Argued October 1, 1928. 

 Before PORTER, P. J., HENDERSON, TREXLER, KEL-
LER, LINN, GAWTHROP and CUNNINGHAM, JJ. 

*A. B. Jobson*, and with him *G. G. Martin*, for appellant.

*Daniel B. Goodwin*, District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., November 21, 1928:

The indictment against appellant, containing three counts, was drawn under the Act of April 23, 1909, P. L. 169, and charged her as a person in the employ of another—a teller in the employ of The Exchange Bank and Trust Company of Franklin, Pa.—with the embezzlement, abstraction and willful misapplication, upon three specified dates within six calendar months, of certain of its moneys, funds and credits, received by her in the course of her employment, by appropriating them to her own use and the use of her husband, John A. Kauffman, with intent to injure and defraud the trust company.

The first count charged the embezzlement, abstraction and misapplication of $2,000 on September 30th;

the second of $2,174.97 on October 6th; and the third of $6,725.03 on October 17, 1927. She was convicted on the first and second counts and acquitted on the third. The learned trial judge overruled her motions in arrest of judgment and for a new trial and we now have this appeal from the sentence imposed.

There are sixteen assignments charging error in (a) refusing to quash the indictment; (b) admitting certain testimony and exhibits; (c) receiving appellant's written confession; and (d) in the general charge and by qualifying the answers to certain points. The motion to quash and the subsequent motion to arrest the judgment were based upon an alleged variance between the indictment and the information and upon the contention that the indictment is defective in form and substance. It is sufficient to say that an examination of the information and indictment discloses that there is no merit in any of these contentions. The information sufficiently supports the indictment and the indictment charges the crime substantially in the language of the act and with such certainty that the defendant knew what she was called upon to answer. Both motions were properly overruled: Commonwealth v. Romesburg, 91 Pa. Superior Ct. 559; Commonwealth v. Widovich et al., 93 Pa. Superior Ct. 323, 331. The assignments respecting the admission of evidence grow out of the vigorous contention of defendant's counsel that the trial judge erred in admitting the testimony of various witnesses to alleged oral admissions and confessions of the defendant and in receiving in evidence her written confession without sufficient prior proof of the corpus delicti. It is also argued that these confessions contained declarations against her husband which rendered them inadmissible. The consideration and disposition of these assignments necessitates some analysis of the evidence for the purpose of ascertaining

whether the commission by some person of any of the offenses charged had been sufficiently shown before the confessions were received. From the preliminary proofs, and exclusive of the evidence of admissions by the defendant, a jury could reasonably find these material and practically undisputed facts.

For approximately nine years prior to October 17, 1927, defendant was employed by the trust company as a bookkeeper and teller. During the last year of her employment she was one of six tellers and also kept the savings account journal. The following recital from the opinion of the court below refusing a new trial is fully supported by the testimony: "The duties of the defendant during the last few years of her employment were acting as teller and bookkeeper in charge of interest savings journal, receiving deposits, cashing checks, and journalizing all of the interest account transactions arising when she was not absent from the bank. The bank employed a considerable force of clerks, including several tellers and bookkeepers. It was the custom of the bank for the tellers to occupy positions at windows beneath which was a counter for change and writing, and drawers to hold currency. Each teller was provided with a safe deposit box and key, with a sum of money. All transactions made by the teller were kept separately, and the transactions balanced each evening. It was the custom for the teller in the morning to take his or her key, go to the safe deposit vault, secure his or her box, bring it to the counter, place the small change on the open part of the desk and the bills in the drawers. During the day the teller received deposits and cashed checks both in the commercial department and savings department. At the close of the day's business, the cash in the box was balanced, and the safe deposit box placed in the vault under lock and key by the teller in whose custody it was placed.

There were not any separate cages for the tellers, and occasionally during the noon hour, one teller would wait upon customers at the window of the absent teller, but would usually make the transactions from her own box, and record the item in her own account. During such absence it was not the custom to lock the drawer in which the currency was kept. The defendant in addition to these duties, kept a journal in which she recorded every item of savings account deposits and withdrawals made in the bank, and this account was balanced in the evening. The entire business of the bank was also balanced by an employee known as the control."

To this statement we may add that at the close of the day it was the duty of the defendant to balance her accounts; report to the clerk who had charge of the cash control; turn over to the proper bookkeepers of the individual accounts of depositors the deposit slips for the deposits to the general accounts which she had received; and send to the proper clerks all checks received by her, whether drawn on the trust company or other local banks or on banks in other localities. The deposit slips relating to the interest bearing savings accounts were retained by her until entered in the proper journal.

On September 30, 1927, Joseph Shaffer, who had a savings account with the trust company and a checking account in the First National Bank of Cochranton, a nearby town, desired to transfer $2,000 from his checking to his savings account. He came to the window where defendant was working and at his instance she filled out for his signature a check upon the Cochranton bank, payable to the order of The Exchange Bank and Trust Company, in that amount. Defendant also filled in, with the exception of the date, a deposit slip for $2,000 and entered the deposit in Shaffer's pass-book. Defendant, however, did not

enter this deposit in her savings account journal and the deposit slip did not pass into the records of the trust company. The check on the Cochranton bank passed through the regular channels and was collected by the trust company. On October 6, 1927, R. A. Gourley, a depositor in the trust company, brought to defendant's window checks on other banks aggregating $2,174.97 for deposit to the credit of his checking account. Defendant filled out a deposit slip for this amount and entered the deposit in Gourley's passbook, but did not turn over the deposit slip to the proper clerks and Gourley's account was not credited with the deposit. The checks were turned over to the proper clerks and were collected from the banks upon which they were drawn. On October 14, 1927, C. E. W. Salter, a director of the trust company and the treasurer of the Dale Investment Company, deposited for that company $6,725 with the defendant. He prepared the deposit slip and defendant entered the amount of the deposit in the pass-book of the Dale Investment Company. This deposit slip was not turned over to the proper bookkeeper and the account was not credited with the deposit. On October 17th Salter asked for the amount of the balance in this account and discovered that the deposit of October 14th had not been credited. The matter was brought to the attention of defendant and she attempted an explanation to the effect that she had made a mistake and entered the credit to the wrong account. She did not return to work the next morning. Her teller's "cash slip" of the previous evening, October 17, 1927, purported to show that she had in her cash box the sum of $8,666.75 in bills and coin.

When defendant failed to appear at the bank on October 18th an investigation of the contents of her safe deposit box was made: it contained only $1,939.-72 in cash. The drawer in the desk at her window was

also examined and in one of the compartments were found the deposit slips for the Shaffer and Gourley deposits and a slip in defendant's handwriting for the Dale Investment Company deposit. A pencil memorandum, containing several sets of figures without any printing or writing indicative of their significance, was also found in the drawer. Set off in the lower right corner of this memorandum were the figures "10,900," and underneath the figures "4,175," followed by a line and the figures "6,725." The first and second counts were based upon the Shaffer and Gourley transactions and the third, upon which she was acquitted, upon the Dale Investment Company deposit.

We think these facts would support an inference that one or more of the offenses defined by the Act of 1909 had been committed. The checks deposited by Shaffer and Gourley became a part of the funds and credits of the trust company but had not been applied to the accounts of the depositors. The retention of the deposit slips by the defendant and the failure to credit the deposits to the individual accounts of the depositors made the apparent liability of the bank to its individual depositors less than it really was by the aggregate of these deposits, $4,174.97, and would serve to conceal a shortage in the cash to that amount. With the proofs in this shape the Commonwealth offered to show: (a) that the defendant in an interview with certain officers of the bank and a representative of the bonding company which had insured her fidelity, at which interview her father was present, admitted that she had been short in her accounts for several years; that the shortage then amounted to $10,900; that a part of the shortage had been falsely entered to the credit of the account of her husband, John A. Kauffman, in the trust com-

pany; and that she took the Shaffer and Gourley checks "to clear up the shortage in her cash drawer and the balance was credited to her husband;" (b) that she went to the bank with the witnesses and pointed out a number of these false credits; and (c) there signed a statement reading: "I, Adah H. Kauffman, do hereby voluntarily, and without any promise made to me or any expectation of immunity under the Criminal Laws of the State of Pennsylvania, admit that I have embezzled and misappropriated the funds of The Exchange Bank and Trust Company, of Franklin, Pennsylvania, in amounts totalling Ten Thousand nine hundred one and 75/100 Dollars ($10,-901.75), to my own use and placed the same to the credit of my husband in the name of John A. Kauffman in his bank account in the said The Exchange Bank and Trust Company, and have falsified the daily cash slips of said The Exchange Bank and Trust Company concealing my misappropriations of said funds, and that the said embezzlement and misappropriations by me have been made during the period between the 17th day of October A. D. 1925, and the 17th day of October A. D. 1927."

An offer was also made to show that when the information was read to her at the office of the magistrate she stated to him that she was guilty. Full opportunity was afforded by the trial judge to counsel for defendant to cross-examine into all the circumstances surrounding the making of the confessions but we find nothing developed which would make it the duty of a trial judge to exclude the offers. In the light of the confession the significance of the quoted figures upon the pencil memorandum becomes apparent, the first evidently recording the amount of the shortage and the second being the aggregate of the Shaffer and Gourley deposits. The account of defend-

ant's husband in the trust company shows three credits in October, 1927: $100 on the 5th; $134.25 on the 10th; and $25 on the 14th, which were pointed out by defendant as false credits. The rule that the fact of the commission of a crime by someone must be shown before a confession will be received is a rule of caution to avoid the injustice of a conviction where no crime exists. When the Commonwealth has given sufficient evidence of the corpus delicti to entitle the case to go to the jury it is competent to show a confession made by the defendant charged with the commission of the offense: Gray v. Commonwealth, 101 Pa. 380, 386; Commonwealth v. Gardner, 282 Pa. 458, 463.

We think the Commonwealth had produced sufficient evidence of the corpus delicti to justify the admission of the evidence showing defendant's confessions and explanations of her methods and her admission that the memorandum slip found in her drawer contained a record of the shortage. An examination of the charge shows that the trial judge submitted this evidence in strict accordance with the rule laid down in Commonwealth v. Wilson, 186 Pa. 1, 22, in these words: "A confession voluntarily made is entitled ordinarily to great weight. If it is, in the language of Mr. Greenleaf, 'forced from the mind by the flattery of hope or the torture of fear,' induced by representation made to the accused, its value is lost. It should be excluded altogether. If it is induced by what may be called collateral inducements it occupies a kind of intermediate position. Such inducements are to be considered as affecting, not the admissibility of the statements made by the prisoner against himself, but their credibility. They should go to the jury with the inducements that led to them, in order that the jury may see how they came to be made, and the motive that operated on the prisoner's mind when they were made.

The jury can then judge of their value and determine the weight to which they are entitled.''

In connection with the assignments alleging error in the admission of certain exhibits, particular complaint is made of the admission of the cash slip, for the reason, as asserted, that it was offered only in support of the third count. As one of the questions for the jury was whether the acts of the defendant in connection with the Shaffer and Gourley deposits were performed with a criminal intent or were due to mere negligence upon her part, the evidence relative to the way in which she handled the deposit of the Dale Investment Company and the manner in which she prepared the cash slip of October 17th was admissible for the purpose of throwing light upon her motives and intentions: Commonwealth v. Bell, 88 Pa. Superior Ct. 216, 223; Commonwealth v. Camwell, 89 Pa. Superior Ct. 339, 345. The admission of the other exhibits, books and records referred to in several of the assignments was fully justified: Commonwealth v. Moyer, 76 Pa. Superior Ct. 20, 26. It is contended in behalf of appellant that, under the rule that husband and wife are incompetent and shall not be permitted to testify against each other, the court could not properly admit either the testimony of the witnesses who testified to her oral admissions, or the written confession itself, because the reference in each to the placing of false credits to her husband's account tended to incriminate him. Appellant was not called as a witness and the husband was not on trial. We have not been referred to any authority holding that the confession by a wife of the commission of a crime by her may not be given in evidence against her upon her trial because it contains statements from which it might be inferred that her husband was implicated in the offense. If the husband had been on trial and

appellant's declarations and admissions had been received against him we would have an entirely different proposition and one upon which the authorities relied upon by counsel for appellant (and those referred to in the note to State v. Record, 151 N. Car. 695, 19 Am. and Eng. Ann. Cases, 528), would have some bearing. After a careful examination we are satisfied that the several assignments alleging error in the admission of testimony and exhibits, including the written confession of appellant, are without merit.

In a number of assignments it is averred that the charge did not properly present to the jury the issues involved under the indictment and the evidence and that the trial judge erred in qualifying his answers to three of the points submitted in behalf of appellant. The contention that the court should have charged that there could be no conviction in the absence of evidence showing that appellant received into her possession and applied to her own use the actual cash proceeds of the checks deposited by Shaffer and Gourley is untenable in view of the broad language of the statute, repeated in the indictment, which includes the abstraction and willful misapplication of funds and credits as well as the embezzlement of cash. The charge as a whole was an impartial presentation of the issues of fact. The evidence was adequately and fairly discussed and the rules of law by which the jury were to be guided in reaching their conclusions upon the facts were clearly explained. No evidence was offered on behalf of defendant and the inferences which might be drawn from the evidence of the Commonwealth were fairly submitted to the jury. We have examined the entire record in the light of the assignments of error but are not persuaded that any reversible error has been committed and therefore dismiss all the assignments.

The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in that court at such time as she may be there called and that she be by that court committed until she has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.